NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CELALETTIN AKARCAY,

             **Plaintiff,**

v.                                           **Case No:   6:15-cv-1760-Orl-22KRS**

COMMISSIONER OF SOCIAL
SECURITY,

             **Defendant.**

_____

## REPORT AND RECOMMENDATON

**TO THE UNITED STATES DISTRICT JUDGE:**

This cause came on for consideration without oral argument on the Complaint filed by Celalettin Akarcay seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits.   Doc. No. 1.   The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration ("SSA").   Doc. Nos. 13, 15.   The parties have filed their Joint Memorandum.   Doc. No. 19. Accordingly, the case is ripe for review.

## PROCEDURAL HISTORY.

In 2009, Akarcay applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Program ("OASDI"), 42 U.S.C. § 401 *et seq.*   He alleged that his disability began on February 20, 2009.   R. 182.

Akarcay's application was denied initially, on reconsideration, and by an Administrative Law Judge ("ALJ").   The Appeals Council found no reason to review the ALJ's decision. Thereafter, Akarcay sought review of the final decision of the Commissioner in this Court.   The

NOT FOR PUBLICATION

Court reversed the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and remanded the case for further proceedings. A judgment was issued on March 21, 2014. R. 925-34.

On remand, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further proceedings. The Appeals Council required the ALJ to associate a later application for benefits filed by Akarcay with the earlier applications and to issue a new decision. R. 938-39.

The ALJ held a hearing on remand. Akarcay, accompanied by his attorney, and Henry M. Maimon, M.D., a medical expert, testified during the hearing. R. 800-56.

After considering the hearing testimony and the evidence of record, the ALJ found that Akarcay was insured under OASDI through September 30, 2014. R. 733. The ALJ found that Akarcay had not engaged in substantial gainful activity since the alleged disability onset date. R. 734.

The ALJ found that Akarcay had the following severe impairments: ulcerative colitis; meniscus tear in the right and left knee, both status-post surgery; degenerative disc disease of the cervical and lumbar spine, status-post surgery in the cervical spine; left shoulder rotator cuff tear, status-post surgery; diabetes; and, hypertension. R. 734. These impairments did not meet or equal any listed impairment. R. 739.

The ALJ found that Akarcay was disabled as of March 22, 2010. R. 754. Before that date, however, the ALJ found that Akarcay had the residual functional capacity ("RFC") to perform light work, as follows:

> [The claimant can] lift and/or carry objects weighing up to 10 pounds frequently and 20 pounds occasionally; standing and/or walking up to 6 hours in an 8-hour workday; sitting with normal

NOT FOR PUBLICATION

> breaks for a total of up to 6 hours in an 8-hour workday except he would need to be near a bathroom for periodic use; never climb ropes, ladders or scaffolds; occasionally climb ramps and stairs; never crawl or kneel; occasionally stoop, bend or crouch; has no manipulative limitations; no limitations on his ability to push/pull within the above weight limitations; no limitations on his ability to see, speak or hear; no work around unprotected heights; no work around dangerous or moving machinery; when standing or walking he needs a hand-held assistive device, which he would carry with one hand, so he would only have one hand to lift or carry and in addition to normally-scheduled breaks, he would need 4 additional restroom breaks of 5 minutes each.

R. 739.

The ALJ found that Akarcay could not return to his past relevant work as an automobile technician.   R. 752.   In reliance on the testimony of the VE from the hearing held before remand, R. 76-84, the ALJ concluded that there were jobs available in the national economy that Akarcay could perform.   R. 753. Accordingly, the ALJ found that Akarcay was not disabled before March 22, 2010. R. 754.

Akarcay seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Akarcay having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   A court's review of a final decision of the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citations omitted), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

NOT FOR PUBLICATION

## STATEMENT OF FACTS.

After a thorough review of the record, I find that the pertinent facts are generally adequately stated in the ALJ's decision and in the parties' Joint Memorandum.   Accordingly, I will only summarize the record evidence relevant to the issues raised about the severity of Akarcay's ulcerative colitis to protect Akarcay's privacy to the extent possible.

Akarcay stopped working on February 20, 2009, when he was laid off.   He believed he lost his job due to his medical conditions.  R. 49, 209, 1635-37.    Thereafter, he received unemployment benefits for a period of time.   R. 361.

Beatrice Bratu, M.D., treated Akarcay for ulcerative colitis beginning in 2005.   R. 333. Dr. Bratu is board certified in internal medicine with a subspecialty in gastroenterology.[1] A colon biopsy ordered by Dr. Bratu in 2007 showed that Akarcay suffered from idiopathic inflammatory bowel disease with moderate activity.   R. 311.   A colonoscopy performed in February 2009 confirmed chronic ulcerative colitis.   R. 313-14. In March 2009, Dr. Bratu observed that Akarcay was clinically better on treatment with Remicade, 6-MP and Asacol.   R. 298.   As of August 11, 2009, Dr. Bratu indicated that the disease was active and moderate with mild response to medication.   She noted that Akarcay had multiple episodes of diarrhea, rectal bleeding and abdominal pain, "which eventually may interfere with his job[.]"   R. 333.

A colonoscopy performed on October 26, 2009 revealed ulcerative colitis from the rectum to mid transverse.   R. 335-36.   Dr. Bratu indicated that Akarcay's ulcerative colitis had

---

[1]    ABMS   MOC,   Certification   Matters,   *Is   Your   Doctor   Board   Certified*, https://www.certificationmatters.org/is-your-doctor-board-certified/search-now.aspx (last visited Oct. 19, 2016).

NOT FOR PUBLICATION

progressed, noting that it "used to just go to the mid descending colon; now it goes to the mid transverse and is quite severe." R. 406. In 2015, Dr. Bratu completed a questionnaire in which she opined that Akarcay would need frequent (hourly) unscheduled breaks lasting ten minutes or more; would be unable to focus on work activity 20% of the time due to symptoms of colitis and other conditions; would be unable to perform even sedentary work on a reliable and sustained basis; and that these impairments and limitations existed since February 2009. R. 1856.

On November 19, 2009, Paul B. Goldberg, M.D., who is also board certified in internal medicine with a subspecialty in gastroenterology,[2] examined Akarcay. Akarcay sought treatment from Dr. Goldberg because he had lost his insurance and could no longer be treated by Dr. Bratu. He also could no longer afford Remicade, which was a medication that had given him good results. R. 406; *see also* R. 300. Akarcay reported that he had up to twenty bowel movements a day, occasionally with blood. R. 406. After examining Akarcay, Dr. Goldberg opined that Akarcay had severe ulcerative colitis. He referred him to a surgeon. R. 408.

On December 18, 2009, Joel Bautista, M.D., a board certified surgeon, examined Akarcay.[3] Akarcay reported that his ulcerative colitis was getting worse, including abdominal pain, diarrhea and blood. Dr. Bautista stated that Akarcay had "intractable ulcerative colitis which has progressed, and he has a history of polyps at risk for malignan[c]y. He is currently stable." R.

---

[2] ABMS MOC, Certification Matters, *Is Your Doctor Board Certified*, found online at https://www.certificationmatters.org/is-your-doctor-board-certified/search-now.aspx (last visited October 13, 2016).

[3] ABMS MOC, Certification Matters, *Is Your Doctor Board Certified*, found online at https://www.certificationmatters.org/is-your-doctor-board-certified/search-now.aspx (last visited October 19, 2016).

516.   Dr. Bautista recommended surgery.   *Id.*   It appears that surgery could not be performed because Akarcay did not have insurance.   R. 59-60, 821.

On March 10, 2010, Dr. Goldberg noted that Akarcay was continuing to have a lot of bowel movements despite taking a new medication.   R. 409.   On March 22, 2010, Dr. Goldberg performed a colonoscopy.   It revealed moderately severe ulcerative colitis. R. 391.   A biopsy taken during the procedure showed extensive evidence of chronic inflammatory bowel disease with substantial ongoing activity.   R. 389.

Dr. Maimon, a board certified internist, testified as the medical expert at the hearings before and after remand based on his review of the exhibits in the record.   R. 28, 816.   In the hearing before remand, Dr. Maimon testified that the natural course of ulcerative colitis was that "[i]t flares and then it gets better, and then it flares and then it gets better."   R. 45.   He opined that Akarcay could sit at least six hours a day, stand and walk two to four hours a day and that he needed to be near a bathroom.   R. 41.   The ALJ did not ask Dr. Maimon to opine regarding the number of restroom breaks and the length of each break that would be needed. Dr. Maimon further testified that Akarcay could lift twenty pounds occasionally and ten pounds frequently, with some postural limitations.   R. 43.

During the hearing after remand, Dr. Maimon testified that Akarcay had a "terribly diseased colon, and he is symptomatic . . . . He's got real problems with his bloody diarrhea . . . ," but that this condition did not meet or equal a listed impairment.   R. 824-25.   At the hearing after remand, Dr. Maimon testified that Akarcay would need at least a ten minute restroom break every hour.   R. 840.   The ALJ asked Dr. Maimon, "[W]hen, in your opinion, did his condition reach the point where you say would have the limitations that you just expressed?"   Dr. Maimon

NOT FOR PUBLICATION

answered, "I think he had it back in 2009 . . . . I would go back to the alleged onset of February 20, 2009."   R. 841-42.

At the hearing before remand, the VE testified that if the hypothetical claimant required a ten-minute restroom break every hour, "that could probably jeopardize the person's continued employment."   R. 83.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Akarcay contends that the ALJ erred by finding that he was not disabled during the period February 20, 2009 through March 21, 2010. He asserts three specific assignments of error:   (1) the ALJ erred by giving little weight to the functional capacity assessment prepared by Dr. Bratu, a treating physician; (2) the ALJ erred by giving little weight to Dr. Maimon's opinion that since February 20, 2009, Akarcay needed hourly restroom breaks for ten minutes each; and, (3) the ALJ erred by failing to state specific and adequate reasons based on substantial evidence in the record to support the credibility finding. He asks that the Court reverse the final decision of the Commissioner and remand the case for an award of benefits from the alleged disability onset date to March 21, 2010.   I will address only these specific assignments of error.

### *Weight Given to the Opinion of Dr. Bratu.*

Dr. Bratu was one of Akarcay's treating physicians.   Therefore, her opinions were entitled to "substantial or considerable weight unless good cause is shown to the contrary."   *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation omitted).   Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the

doctor's medical records.  *Id.* at 1240-41.  Additionally, Dr. Bratu's opinions were entitled to weight because she is a specialist in gastroenterology.  20 C.F.R. § 404.1527(c)(5).

The ALJ gave little weight to Dr. Bratu's 2015 functional capacity assessment.  R. 744. He stated the following reasons for this determination:  (1) the opinion was inconsistent with Dr. Bratu's February 2009 treatment note stating that Akarcay was clinically better on medication; (2) the opinion was inconsistent with Dr. Bratu's August 2009 letter stating that Akarcay's ulcerative colitis was moderate and that his symptoms "'might' interfere with his job"; and, (3) the opinion was "inconsistent with his colonoscopy and biopsy findings up to that point[.]"  *Id.*  Substantial evidence in the record supports each of these three reasons.  A colonoscopy performed in February 2009 showed chronic ulcerative colitis.  In March 2009, Dr. Bratu observed that Akarcay's condition was clinically better with medication.  Dr. Bratu described Akarcay's condition in her August 2009 letter as "active, moderate at this time with mild response to medical treatment so far."  She further stated that Akarcay had "multiple episodes of diarrhea, rectal bleed, abdominal pain which eventually may interfere with his job[.]"  R. 333.  Based on these opinions, the ALJ correctly found an apparent inconsistency between Dr. Bratu's statements in 2009 and her opinion in 2015 that Akarcay would have been unable to perform even sedentary work on a reliable and sustained basis since February 2009.

However, the ALJ did not explain why he did not credit the results of the October 26, 2009 colonoscopy and Dr. Bratu's opinion at that time that Akarcay's ulcerative colitis had progressed and was quite severe.  As discussed above, this colonoscopy revealed ulcerative colitis from the rectum to mid transverse.  R. 335-36.  Dr. Bratu explained to Dr. Goldberg that these findings indicated that Akarcay's ulcerative colitis had progressed, noting that it "used to just go to the mid descending colon; now it goes to the mid transverse and is quite severe."  R. 406.  Perhaps the

ALJ considered this colonoscopy and Dr. Bratu's opinion, but when, as here, "the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)(per curiam)).

Because the ALJ did not state good cause for rejecting Dr. Bratu's opinion in the fall of 2009 regarding the progression of Akarcay's ulcerative colitis, substantial evidence in the record does not support the conclusion that Dr. Bratu's 2015 functional capacity assessment was inconsistent with the October 2009 colonoscopy and with Dr. Bratu's opinion that this colonoscopy showed progression of the disease.    For these reasons, I recommend that the Court find that the ALJ erred in giving little weight to all of Dr. Bratu's opinions.

*Weight Given to the Opinions of Dr. Maimon.*

As a medical expert, rather than a treating or examining physician, Dr. Maimon's opinions are not entitled to considerable or significant weight.   Nevertheless, because he is board certified in internal medicine, his opinions were entitled to weight because he testified as to matters within his area of specialty.   20 C.F.R. § 404.1527(c)(5).

The ALJ gave greater weight to Dr. Maimon's opinion rendered during the hearing before remand than to the opinion of Dr. Bratu.   Dr. Maimon testified at that time that Akarcay could perform light exertional work, with the need to be near a bathroom.   The ALJ stated two reasons for this decision as it pertained to ulcerative colitis:   (1) the opinion was "more consistent with the objective medical evidence of record, which showed that claimant's ulcerative colitis was generally moderate in nature and was improved on medications for part of the period at issue"; and, (2) his opinion "accounts for the claimant's need to be near a restroom while working and to

NOT FOR PUBLICATION

take 4 additional restroom breaks of 5 minutes each per day in additional to the normal breaks allowed." R. 744. Substantial evidence in the record does not support these conclusions.

First, as discussed above, all of the objective medical evidence in the record before the first hearing did not show that Akarcay's ulcerative colitis was generally moderate in nature. Rather, the October 2009 colonoscopy showed progression of the disease to a level Dr. Bratu found to be severe. Second, Dr. Maimon did not testify during the hearing before remand that four additional restroom breaks of five minutes each would accommodate Akarcay's need to be near a bathroom.

The ALJ gave little weight to Dr. Maimon's opinion at the hearing after remand that, beginning on February 20, 2009, Akarcay would have needed a ten-minute restroom break every hour during a workday. The only explanation for this finding was that Dr. Maimon's "testimony at the first hearing in 2011 is consistent with the claimant's limitations prior to March 22, 2010." R. 751. The ALJ did not cite any specific evidence in the record to support this conclusion. And, as Akarcay argues, there was nothing inherently inconsistent between Dr. Maimon's opinion during the hearing before remand that Akarcay would need to be near a restroom and his opinion during the hearing after remand that Akarcay would need a ten-minute restroom break every hour during a work day. Without a clearer statement of the reason the ALJ rejected Dr. Maimon's opinion that Akarcay that, as of February 20, 2009, Akarcay needed a ten-minute restroom break every hour, the record is insufficient to conclude that the ALJ's decision is supported by substantial evidence and by correct application of the law. *Winschel*, 631 F.3d at 1179. This error is not harmless because the VE testified at the first hearing that the need for a ten-minute break every hour would jeopardize a person's ability to work.

For these reasons, I recommend that the Court find that the ALJ erred in giving little weight to Dr. Maimon's opinion rendered during the hearing after remand.

NOT FOR PUBLICATION

*Credibility*.

The ALJ found that Akarcay's reports of limitations from ulcerative colitis were not entirely credible prior to March 22, 2010.   R. 743.   When, as here, an ALJ decides not to credit a claimant's testimony as to pain and other subjective symptoms, he must articulate explicit and adequate reasons for doing so.   *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). The ALJ cited three reasons to support this credibility decision:    (1) the objective medical evidence; (2) the reason Akarcay stopped working; and (3) Akarcay's receipt of unemployment compensation.   R. 743-44.

As to the first reason, the ALJ focused on colonoscopies and biopsies performed through August 2009, without discussing the October 2009 colonoscopy that showed progression of the ulcerative colitis.   R. 743.   He relied on Dr. Goldberg and Dr. Barber's findings on examination without discussing, in this part of the decision, Dr. Goldberg's opinion in November 2009 that Akarcay's ulcerative colitis was severe.   This selective reading of the record to support the credibility finding was error.   *See, e.g., Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986).

The second reason that the ALJ relied on has some support in the record.   The ALJ found it significant that Akarcay stopped working because he was laid off rather than due to medical impairments, but there is some evidence in the record that the loss of his job was due to his medical conditions. The ALJ also cited Akarcay's receipt of unemployment benefits as evidence that undermined Akarcay's credibility.   Receipt of unemployment compensation benefits is evidence that an ALJ properly can consider in making a credibility finding, but it should not be dispositive standing alone.   *See, e.g., Ricker v. Comm'r of Soc. Sec.*, No. 5:13-cv-479-Oc-18PRL, 2014 WL 6610849, at *10 (M.D. Fla. Nov. 21, 2014); R. 1325 (SSA Memorandum stating that receipt of unemployment benefits is only one of many factors that must be considered).   In this case, it

NOT FOR PUBLICATION

appears that the ALJ relied heavily on the receipt of unemployment benefits to the exclusion of

the record as a whole.   During the hearing after remand, the ALJ remarked as follows:

> I'm not unwilling to find him disabled, okay? I would not necessarily agree with
> going back to the alleged onset date for the fact that he drew the unemployment . .
> . . As long as he continued to draw the unemployment, he had to go out and apply
> and look for jobs. . . . You know, he didn't leave his job because of his illness,
> okay?   There's a bunch of different reasons offered but I think he was just let go
> and then that's why he applied for unemployment.

R. 848-49, 855-56.

Therefore, considering the record as a whole, I recommend that the Court find that the

ALJ's credibility decision is also not supported by substantial evidence.

*Further Proceedings.*

Due to the errors discussed herein, I recommend that the Court find that the final decision

of the Commissioner is due to be reversed.   Akarcay asks that the case be remanded for an award

of benefits from February 20, 2009, the alleged disability onset date.   Remand for an award of

benefits is appropriate only when "the [Commissioner] has already considered the essential

evidence and it is clear that the cumulative effect of the evidence establishes disability without any

doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (citation omitted).

In this case, the Commissioner has already considered the essential evidence, which

establishes that Akarcay is disabled without any doubt, but the issue of the onset date of this

disability is not without doubt.   As discussed herein, objective medical evidence shows that

Akarcay's ulcerative colitis was severe as of October 26, 2009, but both Dr. Bratu, a treating

physician, and Dr. Maimon, the medical expert, opined that the functional limitations that the ALJ

found to be disabling as of March 22, 2010 existed as of the February 20, 2009 disability onset

date. The record appears to support a disability onset date of October 26, 2009, but Akarcay

NOT FOR PUBLICATION

contends that the proper onset date is February 20, 2009.  Under these circumstances, I recommend that the Court remand the case for further proceedings to establish the disability onset date with instructions to the Commissioner to develop the record more fully regarding Dr. Bratu and Dr. Maimon's opinions about the basis of their disability onset date opinions.

### RECOMMENDATION.

For the reasons set forth above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and this case be **REMANDED** to the Commissioner for further proceedings consistent with this Court's order on this recommendation.   After the Court issues its Order on this Report and Recommendation, I further **RECOMMEND** that it direct the Clerk of Court to issue a judgment consistent with that Order and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

Respectfully recommended in Orlando, Florida on October 26, 2016.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE